IN THE UNTIED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ENVALO, INC.<br>5247 Wilson Mills Road, Suite 446<br>Cleveland, Ohio 44143<br><br>  Plaintiff<br><br>vs.<br><br>JOSEPH WALTERS<br>2201 Amaranth Court<br>Hinckley, Ohio 44233<br><br>  and<br><br>RIGHT CLICK MARKETING AND<br>MANAGEMENT, LLC<br>c/o Megan Walters<br>6211 Alexandria Drive<br>Parma Heights, OH 44130<br><br>  Defendants. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR CONTRACT DAMAGES, BREACH OF CONTRACT, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF FIDUCIARY DUTIES, UNJUST ENRICHMENT, MONETARY AND INJUNCTIVE RELIEF**<br><br>**Jury Demand Endorsed Hereon** |

Now comes Plaintiff, Envalo, Inc., by and through counsel, Matthew Miller, Robert Goff and Jonathan Good, and for its Complaint against the Defendants, Joseph Walters and Right

Click Marketing and Management, LLC for breach of contract, misappropriation of trade secrets, breach of fiduciary duties, and unjust enrichment.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Envalo, Inc., (hereinafter referred to as "Envalo") is an Ohio Corporation licensed to do business in the State of Ohio, with its principal place of business located at 5247 Wilson Mills Road, Suite 446, Cleveland, Ohio in Cuyahoga County, Ohio, engaged in the e-business consulting including but not limited to providing strategic planning, information technology, software, contract services and related support, training and services in the custom web applications marketplace.

2. Defendant, Joseph Walters (hereinafter "Walters") is an individual domiciled in Ohio residing at 2201 Amaranth Court, Hinckley, OH 44233.

3. Defendant, Right Click Marketing and Management, LLC (hereinafter "Right Click Marketing") is a domestic limited liability company in Ohio and engaged provision of e-business consulting services.

4. Walters was/is a member of Right Click Marketing and a former employee and co-owner of Envalo.

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C §1331 in that this matter involves a federal question specifically the Defense of Trade Secrets Act, 18 U.S.C. §§1831 et seq.

6. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b). A substantial part of the cause of action occurred in this District.

## FACTS

7. On October 8, 2018 Envalo contracted with Defendant Walters, individually and as an agent/member of Right Click Marketing to work exclusively for Envalo in exchange for part ownership and employment with Envalo. (A copy of the subject Employment Agreement [the "Agreement"] is attached hereto and incorporated herein as Exhibit "1").

8. Envalo hired Defendant Walters as the Chief Technology Officer, Director of Technology, Director of Technical Consulting and Walters became a part owner of Envalo.

9. Defendant Walters, as part of his job responsibilities at Envalo daily used, reviewed and made use of Envalo's trade secrets of Envalo including, but not limited to, customer lists, pricing lists, contracts, contacts in the e-business consulting fields, strategic planning, information technology, software, training, services in the custom web applications marketplace, supported sales as a technical sales engineer and led technical aspects of client projects.

10. Defendant, Walters, as a condition of the Agreement promised to "devote his entire productive time, ability and attention to the performance of his duties with [Envalo]…perform his duties faithfully and efficiently… [and] will not be employed by, contract with or otherwise connected in any way with, directly or indirectly, an individual, partnership, corporation or other entity providing e-business consulting services." See Exhibit "1."

11. Walters, as a condition of the Agreement, promised to return all proprietary information, maintain confidentiality, restrict direct or indirect business competition, restrict solicitations, not to disclose Envalo's trade secrets, and other terms if either party terminated the agreement. See Exhibit "1."

12. Walters obtained during his employment with Envalo proprietary and confidential information concerning Envalo's proprietary, sensitive and confidential information, including, but not limited to, business procedures, customer lists, contracts, contact information, and other sensitive information (the "Trade Secrets") allowing Envalo to gain competitive advantages.

13. Envalo uses the Trade Secrets to provide consulting services at a competitive cost in a highly competitive business environment.

14. Envalo spent years developing the Trade Secrets, has maintained the Trade Secrets confidential at great cost and expense, and the information which comprises the Trade Secrets is not information easily or readily accessible to the public.

15. On December 19, 2022 at 2:17pm, Walters downloaded into Walters' possession to an IP address outside of Envalo's control 148 confidential data files, source codes, and other trade secret information of Envalo. These files included proprietary client information, order information, proprietary solution integration architecture, confidential server and network configurations, proprietary integrations including but not limited to middleware and systems, and other trade secret, proprietary, and confidential information, data, source code.

16. Walters also engaged in multiple other activities in breach of his contracted and fiduciary duties, including but not limited to changing access permissions for three files from "Envalo domain visibility only" to "Anyone can access with a link" designation/permissions. Each of these three files contained proprietary integration architecture, systems, processes that were Envalo's trade secrets, proprietary, and confidential property.

17. Walters shared proprietary IP projects with third parties, diverted access to Envalo's trade secret, proprietary, and confidential information from Envalo's secured

procedures to Walters' exclusively private access keys and shared this access with others outside of Envalo.

18. At 4:07pm on December 19, 2022 - less than two hours later that same day - Walters resigned his employment with Envalo.

19. Walters failed to return to Envalo its trade secret, proprietary, and confidential information including but not limited to the 148 downloaded files. Walters still possesses Envalo's trade secrets, proprietary, and confidential information to this day, in direct breach of the Agreement.

20. Envalo learned that BORN GROUP, INC. extended Walters an offer of employment in the similar type of position as he was at Envalo.

21. Upon information and belief Walters accepted employment, or a consulting agreement, from the BORN GROUP, INC. ("Born"), a direct competitor with Envalo in the e-business consulting market, in January 2023 in direct violation of his the restrictive covenants and other terms and conditions of the Agreement.

22. Envalo, by UPS overnight mail, advised by letter, both Walters and BORN GROUP, INC. that Defendant Walters was in violation of the Agreement with Envalo if he worked for BORN GROUP, INC. and a copy of the excerpted sections of the Agreement containing the restrictive covenants was sent both Defendant Walters and BORN GROUP, INC.

23. To the best of Envalo's knowledge, Walters continues to work for BORN GROUP, INC. and/or Right Click Marketing, who are direct competitors of Envalo.

24. Walters is sharing, using, possessing, and disclosing Envalo's trade secrets, proprietary, and confidential information in breach of his agreement with Envalo.

25. Walters is, at the time of filing this action, soliciting Envalo's customers and clients.

26. After Walters' resignation, Envalo discovered that Walters failed to devote his entire productive time, ability and attention to the performance of his duties with Envalo as he also provided e-business consulting services (i.e. "moonlighted") for other clients outside of the terms of the Agreement for at least, if not more, the years of 2021 until his resignation on December 19, 2022.

## COUNT ONE – BREACH OF CONTRACT

27. Envalo incorporates as if fully restated herein all of the facts and assertions set forth in Paragraphs 1 through 26 above.

28. Walters is in breach of the Agreement to refrain from working for a direct or indirect competitor of Envalo for twelve months after leaving Envalo, an agreement he signed as a condition of his employment at Envalo.

29. Walters in his new position at Born, and/or other entities, is actively using the Trade Secrets and other valuable skills provided to him by Envalo at other businesses including BORN GROUP, a direct competitor in the relevant market.

30. Walters' employment employment at Born and other employers' subsequent to the termination of his employment for Envalo, has used of the Trade Secrets or will inevitably disclosure the Trade Secrets which has caused irreparable economic and competitive damages and will continue if Walters continues to work at Born and consult for other companies in violation of his Agreement with Envalo.

31. Born was put on notice by Envalo that, Walters was a party to the Agreement. Notwithstanding, continues to employ Walters despite its knowledge of his contractual commitments at the detriment of Envalo.

32. Envalo demanded that Waters return its Trade Secret information and cease his ongoing direct and indirect competition, solicitations, and disclosures of confidential information. Walters continues to breach his contractual and fiduciary duties to Envalo.

33. Walters is soliciting Envalo customers and contacts and continues to do so.

34. Walters actions has created real economic damages to Envalo, which are difficult to calculate, given that an e-business client or contact may be a continuing revenue source for decades.

35. Envalo has historically enforced all of its Non-Competition/Non-Solicitation/Non-Disclosure Agreements against any employee who violates it to protect the jobs of its current employees and to help maintain the business in a highly competitive e-business environment.

36. Envalo asserts claims for damages for the violation of Walters' contract obligations disregard for contract commitments in amount of Four Million Dollars ($4,000,000.00) and the costs, including attorney fees, of this action for damages and injunctive relief to avoid further damages.

## COUNT TWO – MISAPPROPRIATION AND THEFT OF TRADE SECRETS

37. Envalo hereby restates and realleges the statements, allegations, and averments contained in Paragraphs 1 through 36, as if fully set forth herein.

7

38. Envalo's Trade Secrets, fulfill the elements of protected trade secrets under both the Federal Defend Trade Secrets Act (18 U.S.C. §§1831, *et seq.*) and Ohio Uniform Trade Secrets Act (*See* O.R.C. §§1333.61, *et seq.*) and are entitled to all statutory protections under those sections.

39. Envalo's Trade Secrets are owned only by Envalo and only certain Envalo employees have access thereto and Envalo has taken substantial steps to maintain the privacy of such.

40. Envalo's Trade Secrets sufficiently secret and difficult to obtain so that they have actual and provable economic value.

41. Envalo's Trade Secrets are not known to its competitors, except through Walters.

42. Envalo's Trade Secrets cannot be recreated by ENVALO's competitors without a significant expenditure of time, effort and expense.

43. During the course of his employment with Envalo, Walters acquired knowledge of Envalo's Trade Secrets.

44. Walters acquired knowledge of the Trade Secrets under circumstances giving rise to the duty by Walters to maintain their secrecy.

45. Envalo entrusted its Trade Secrets to Walters in the performance of his duties as an Envalo employee.

46. As described above, Walters agreed he would not improperly utilize or divulge Envalo's Trade Secrets.

47. Walters and Right Click Marketing misappropriated Envalo's protected and highly valuable Trade Secrets and provided such to a known competitor. Such misappropriation

violates the Ohio Uniform Trade Secrets Act and Federal Defense of Trade Secrets Act as identified above.

48. Defendants' thefts and the acts described above present and ongoing irreparable harm to Envalo.

49. Defendants' retention of the Trade Secrets and their use and disclosure of such is ongoing, continuing, and inevitable.

50. Defendants' acts of misappropriation and use of Envalo's Trade Secrets are transgressions of a continuing nature for which Envalo has no adequate remedy at law.

51. Unless Defendants are enjoined from further acts of misappropriation and use of Envalo's trade secrets and confidential information, Envalo will continue to suffer irreparable harm.

52. As a result of Defendants' misappropriation, Envalo is entitled to damages and injunctive relief under R.C. §1333.61 *et seq.* as well as 18 U.S.C. §§1831 *et seq.*, including but not limited to 18 U.S.C. §1832 and 18 U.S.C. §1836(b)(3)(A-B).

53. Defendants' theft and continuing use of Envalo's Trade Secrets was done knowingly, intentionally, willfully, wantonly, maliciously, and/or was taken and used with reckless disregard for the rights of Envalo so as to warrant an award of punitive damages.

54. Due to the intentional knowing and reckless nature of Defendants' conduct, Envalo is entitled to reimbursement of its attorneys' fees and treble damages under 18 U.S.C. §1836(b)(3)(C-D) and other applicable State and Federal law(s).

55. As a result of Defendants' theft of Envalo's trade secrets, Envalo has suffered, and will continue to suffer, irreparable injury, including monetary damages in excess of $4,000,000.00.

## COUNT THREE – BREACH OF FIDUCIARY DUTIES

56. Envalo hereby restates and realleges the statements, allegations, and averments contained in Paragraphs 1 through 55, as if fully set forth herein.

57. Walters' co-ownership of shares in Envalo, and separately, his employment as Chief Technology Officer placed Walters in a confidential relationship with Envalo.

58. Defendant Walters' co-ownership of shares in Envalo, and separately, his employment as Chief Technology Officer created a special trust and confidence in Walters.

59. By reason of Defendant Walters' co-ownership of shares in Envalo, and separately his employment as Chief Technology Officer, Walters occupied a fiduciary relationship with Envalo.

60. As a fiduciary, Defendant Walters' owed Envalo the duty of good faith and fair dealing.

61. Defendant Walters' actions as detailed herein and his unexpected voluntary self-termination/resignation constitutes a breach of Walters' fiduciary duty.

62. As a direct and proximate result Walters' breaches of fiduciary duties, Envalo has been damaged the exact amount of which will be determined at the trial of the within matters including but not limited to interest, attorney fees, and costs.

## COUNT FOUR – UNJUST ENRICHMENT

63. Envalo hereby restates and realleges the statements, allegations, and averments contained in Paragraphs 1 through 62, as if fully set forth herein.

64. Defendants have been unjustly enriched at Envalo's expense on the use of Envalo's Trade Secrets, the decades of contacts in the e-business consulting field alone are of great value.

65. Defendants Walters and Right Click Marketing despite the courtesy of a notice Walters contractual obligations decided to go forward to purloin proprietary information that has taken Envalo years to acquire and create.

66. Envalo seeks damages of $4,000,000.00 for the theft of information of which they both will unjustly enrich themselves, and the costs of this action to enforce the contractual agreement (Exhibit "1") with Walters and which was enabled and profited in by Born and Right Click Marketing.

67. The continued employment and consulting services of Walters by Born and Right Click Marketing will cause the irrefutable and irreparable harm and economic loss to Envalo since once a customer is lost it is difficult to actually determine the amount and duration of lost revenues the Defendants will be unjustly enriched by and therefore, Envalo requests injunctive relief in addition to monetary damages.

**WHEREFORE**, the Plaintiff Envalo demands judgment against the Defendants jointly and severally for:

1. damages on each of Envalo's Counts of Breach of Contract, Breach of Fiduciary Duty, and Unjust Enrichment, Tortious Interference and Civil Conspiracy in an amount of Four Million Dollars ($4,000,000.00), the cost of this action, including reasonable attorneys' fees, interest, expenses, for the theft and conversion of proprietary, confidential business and customer information;

2. Injunctive relief to prevent further damage by Walters and Right Click Marketing through the continuing violation of Walters' contractual obligations and any and other legal and equitable remedies this Court deems just and proper.

        s/Jonathan A. Good_____
**MATTHEW C. MILLER (0084977)**
MMiller@westonhurd.com
**ROBERT GOFF (0069818)**
RGoff@westonhurd.com
**JONATHAN A. GOOD (0065649)**
JGood@westonhurd.com
**Weston Hurd LLP**
1300 East 9th Street, #1400
Cleveland, Ohio 44114-1862
216/241-6602 (Fax: 216/621-8369)
**Attorneys for Plaintiff**

## JURY DEMANDED

Envalo hereby requests a trial by jury on all claims and relief sought within its authority and on all issues triable thereby with the maximum number of jurors permitted by law.

        s/Jonathan A. Good_____
**JONATHAN A. GOOD (0065649)**
JGood@westonhurd.com
**Attorneys for Plaintiff**